[Civ. No. 5280.   Third Appellate District.—April 26, 1935.]

JOE V. CARDOZA, Respondent, v. WEST AMERICAN COMMERCIAL INSURANCE COMPANY (a Corporation), Appellant.

Len H. Honey for Appellant.

Hawkins & Hawkins for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment which was rendered against it in a suit on an automobile casualty policy. It is contended the evidence fails to support the finding of the court and judgment.

The defendant was the insurer of an automobile owned by the plaintiff. The policy contains a clause exempting the insurance company from liability for damages resulting from an accident while the plaintiff's automobile was being used to convey passengers for hire. June 20, 1931, while the plaintiff's machine was being operated with his consent by his daughter, Belle Cardoza, a collision occurred with another automobile owned by J. W. Wheatley. Florence DeMartini, who was then riding in the plaintiff's car, was injured as a result of the accident. In a suit for damages against the plaintiff and his daughter for personal injuries received as a result thereof, Miss DeMartini recovered judgment against the plaintiff for the sum of $5,698.17 and costs of suit. This action was then commenced for reimbursement against the insurance carrier. The cause was tried by the court sitting without a jury. Among the findings which were adopted by the court favorable to the plaintiff, was one which determines that the insurance policy contains a clause exempting the defendant from liability for an accident which occurs while the plaintiff's machine is being used to convey passengers for hire, but it was held that the car "was not at any time driven or operated . . . while carrying a passenger or passengers for consideration". Judgment was accordingly rendered against the defendant. From that judgment this appeal was perfected.

The only question raised on appeal is whether there is substantial evidence to support the finding that the automobile was not being used at the time of the accident to convey a passenger for consideration. After carefully reading the entire record we are satisfied the evidence adequately supports the finding in question and that the judgment should therefore be affirmed. On appeal the rules applying to the determination of the sufficiency of the evidence

to support the findings and judgment are all favorable to the prevailing party. Every reasonable inference that may be drawn from the record as a whole must be resolved in support of the judgment. When the testimony is conflicting, as it is in the present case, the weight of the evidence and the credibility of witnesses are questions for the determination of the trial court and its conclusions regarding those matters may not be disturbed on appeal in the absence of a clear abuse of its discretion. (2 Cal. Jur. 879, sec. 515.) In this case there is a hopeless conflict of evidence between the testimony of different witnesses, and sometimes a conflict of evidence appears to exist between different statements of the same witness. All these inconsistencies must be resolved in favor of the respondent. In determining whether the record adequately supports the finding that the plaintiff's car was not being used at the time of the accident to convey a passenger for hire, we observe that some of the witnesses were apparently intellectually sluggish. The burden was on the defendant to prove its allegation that the policy was rendered void for the reason that the car was being used at the time of the accident to convey a passenger for hire.

It was not a question as to whether some compensation had been paid to the daughter of the plaintiff in previous years for conveying a passenger, although that fact might throw some light on·the vital question as to whether it was being used for that purpose at the time of the accident. That circumstance was trivial. Such evidence regarding former transactions in a previous year is of small value. It is not charged that the plaintiff received pay for the use of his machine to convey passengers. The ladies who were involved in this accident had been employed in the cannery only nine days prior to the accident. They were friends. They ate their lunches together. It does not appear to have been the regular procedure for Belle Cardoza to always carry Florence DeMartini to and from the cannery. In response to the question, "How many times did you take Miss DeMartini to and from work in 1930?" Belle Cardoza said, "I just brought her from work a couple of times at night." She testified positively that she had not received any money from Miss DeMartini for conveying her to or from the cannery during the season of 1931, when the accident occurred, or for conveying any other passenger, either during that season or at any other time, and that she never had any

intention of charging her for that service. She does say that after the accident occurred, the brother of Miss De-Martini one day brought $1.50 to the Cardoza home, saying it was "some money that the lawyer sent me over to bring you." She told him that "nobody owes me any money". He left the money on the table, but she promptly returned it. In support of the judgment, the trial court may have reasonably assumed that someone was trying to pay her some money so as to set up the defense to the policy that it was rendered void by accepting pay for conveying a passenger. It appears without conflict that no money was actually paid for conveyance in the machine in the year 1931. But it is contended that the evidence shows that Miss Cardoza took her friend to and from the cannery with the understanding that she was to be paid. In fact Miss De-Martini testified that on the day of the accident she said to Belle Cardoza, "Tomorrow is pay day and I will pay you," and that she replied, "That is all right." The subject of paying for the ride was not mentioned between them before that occasion. Miss Cardoza denies that this was said. The record fails to disclose the inflection with which the reply was made. Miss DeMartini testified that she understood it to mean that she was not expected to pay for her conveyance; that when she offered to do so, Miss Cardoza, in effect, said, "That (riding with me) is all right, I don't expect you to pay for it." On cross-examination regarding that subject, Miss DeMartini said: "Q. . . . When you said to her 'Today is pay day and I will pay you', and she said, 'That is all right', what were you going to pay her for? A. Well I guess I wasn't going to pay her. . . . I wasn't going to pay her if she said it was all right. . . . If she didn't want anything I couldn't very well pay her. . . . Q. You understood from that that she wasn't going to make any charge for transporting you, is not that it? A. Yes." While Miss DeMartini did testify that she had paid for her transportation the year previous to the accident, she also testified in that regard: "Q. Can you recall any time in 1930 that Belle Cardoza took you to the cannery? . . . A. I know I came home with her but I don't remember going (to the cannery with her). Q. Now, do you recall of ever paying her any moneys in 1930? . . . A. No, I can't recall."

There was an effort to impeach Miss DeMartini by showing that she had previously said she had paid Miss Cardoza for conveying her to the cannery in 1930, and that she had signed her complaint which was filed for damages for her personal injuries received in the accident, containing the statement that she had paid for her conveyance. But we are mindful of the fact that many persons who are not familiar with legal proceedings carelessly sign documents without knowing what statements they contain. At least the credibility of the witness, and the question regarding her impeachment were questions almost exclusively for the determination of the trial court. Even though this court might have reached another conclusion regarding the expectation of Belle Cardoza to receive pay for transporting her friend to or from the cannery at the time of the accident, we are unable to say that the trial judge was not reasonably warranted in deciding that no such agreement existed.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 24, 1935.